**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLEAN FOSTER, | ) | |
| individually and on behalf of a class, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.: 07 CV 824** |
| | ) | |
| v. | ) | **Judge Hibbler** |
| | ) | |
| VELOCITY INVESTMENTS, LLC, | ) | **Magistrate Judge Valdez** |
| | ) | |

<u>**DEFENDANT'S MOTION TO DISMISS**</u>

Defendant, Velocity Investments, LLC ("Velocity"), by its attorneys, David M. Schultz and Justin M. Penn, submit this Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6) and in support thereof, state the following:

**I.        Introduction**

Plaintiff is attempting use the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq., ("FDCPA") as a vehicle to regulate the content of pleadings filed in Illinois state court. Plaintiff does not dispute that she owes the debt.  Nor does Plaintiff assert that Velocity attempted to coerce payment for an amount not legally recoverable in the underlying Illinois state action.  Plaintiff instead claims that the collection complaint and affidavit filed in state court violated the FDCPA.  The Plaintiff asserts that it was false to identify the amount that the credit card company charged off after Plaintiff's default as "principal" because it included interest and fees.

Plaintiff's claim should be rejected.  First, the FDCPA was not intended to extend liability for alleged misstatements in pleadings filed in state courts.  State court judges applying state court rules and procedures should govern state pleadings, not federal judges applying

6185832v1 875082

federal law. Even assuming the FDCPA was intended to govern state court pleadings, the purported violations of the FDCPA arise solely from an affidavit supporting the allegations of the collection complaint, and Velocity's affidavit is entitled to absolute witness immunity. In addition, federal law and the litigation privilege afford Velocity with additional immunity from liability for its purported misstatements. Lastly, this Court should decline to exercise jurisdiction over Plaintiff's Complaint because regulating the contents of documents filed in state court proceeding is an improper exercise of this Court's jurisdiction.

## II.     Allegations of Complaint

In February 2006, Velocity filed a lawsuit[1] against the Plaintiff seeking to collect nearly $2,500. Complaint ¶ 10. This debt resulted from a credit card that the Plaintiff held. Cmplt. ¶ 10. Velocity attached an affidavit to its collection complaint that verified the amount that the Plaintiff currently owed on her defaulted credit card debt. Cmplt. ¶11. The affidavit explained that the Plaintiff owed a principal balance of $1,463.81 and interest/fees of $1,018.88. Cmplt ¶ 12. The "principal" amount, $1,463.81, represented the amount that the Plaintiff owed the original credit card company when it charged off her account after Plaintiff stopped paying. Cmplt. ¶ 14. The "interest/fees" of $1,018.88 represents the amount that has been added to the charged off amount since the charge off date until January 19, 2006. Ex. A to Cmplt.

Plaintiff does not claim that the collection complaint and supporting affidavit is seeking to recover more than she owes on her defaulted credit card debt. Nor does Plaintiff claim that she did not default or that any portion of the underlying debt is not legally recoverable. Plaintiff asserts that by labeling the charged off amount as "principal," Velocity's collection complaint and affidavit violated the FDCPA. Cmplt. ¶¶ 4, 21. Plaintiff alleges that the amount of her

---

[1]     Plaintiff did not attach the underlying collection complaint to the instant Complaint. Rather, Plaintiff only attached the Affidavit supporting the collection complaint.

defaulted debt when it was charged off included her underlying credit card charges as well as interest charges, finance charges, and fees. Cmplt. ¶ 14. Plaintiff concludes that mislabeling these amounts as "principal" in the collection lawsuit violates the FDCPA because the collection complaint and affidavit: (1) constitute a false, deceptive or misleading representation in connection with the collection of a debt in violation of § 1692e; (2) falsely represent the "character" of the Plaintiff's debt in violation of § 1692e(2)(A); or (3) employ a false or deceptive means to collect or attempt to collect a debt in violation of § 1692e(10). Cmplt. ¶ 21.

### III.    Argument

*A.      The History and Scope of the Fair Debt Collections and Practices Act*

The FDCPA regulates the practices used to collect a debt. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) ("[t]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists."). However, the FDCPA "does not so much as hint at being an enforcement mechanism for other rules of state and federal law." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 2007 W L 675625, 2 -5 (7th Cir. 2007).

Amendments to the FDCPA show that it should not apply to the contents of state court pleadings. First, in 1996, Congress amended §1692(e)(11) to specifically exclude state court pleadings from its scope. Pub.L. 104-208, § 2305(a) (Sept. 30, 1996). The amended version of §1692(e)(11) states the following:

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, **except that this paragraph shall not apply to a formal pleading made in connection with a legal action.**

3

15 U.S.C.A. § 1692e.  This amendment eliminated the requirement that legal pleadings seeking to collect a debt contain a statement that the communication is from a debt collector who is attempting to collect a debt, and that any information obtained from the debtor will be used for that purpose.

This past fall, Congress again amended the FDCPA.  That amendment clarified that state court legal pleadings need not be preceded or accompanied by verification notices. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,  480 F.3d 470, 473 (7th Cir. 2007) (citing Pub.L. 109-351, 120 Stat.2006 (Oct. 13, 2006) adding 15 U.S.C. § 1692g(d)). The amended version of 1692g states:

> **(d) Legal pleadings**
>
> **A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section.**

15 U.S.C.A. § 1692g.  This amendment nullified the Seventh Circuit's previous holding in *Thomas v. Simpson & Cybak,* 392 F.3d 914 (7th Cir.2004) that the FDCPA's statutory "verification notice" must precede or accompany a complaint when the creditor's law firm satisfies the definition of a debt collector.

These recent Congressional amendments evidence that Congress did not intend the FDCPA to regulate the contents of pleadings filed in state court proceeding.

> B.     *Velocity's collection complaint and affidavit filed in Illinois state court do not violate the FDCPA because the FDCPA does not extend to state court pleadings.*

Plaintiff asks the Court to extend the scope of the FDCPA to address the adequacy of pleadings in state court and provide a federal remedy [and a potential class action] for every misstatement in the contents of those pleadings.  This Court should decline Plaintiff's request. The FDCPA does not saddle federal courts with policing documents that are filed in state court.

4

Instead, state court judges determine whether such filings comply with state law, procedure and court rules.  If a state court is confronted with a pleading it deems to be insufficient or erroneous, it has a number of remedies at its disposal, ranging from dismissal to sanctions. In addition, pleadings may be freely amended and corrected.

The FDCPA does not provide a second, federal layer of regulation directed at state court litigation. In fact, the circuit courts have rejected attempts to use the FDCPA to monitor state courts and state law by federal courts.  *Wade v. Regional Credit Ass'n.,* 87 F.3d 1098, 1099 (9th Cir. 1996) (debt collection practices in violation of state law are not per se violations of FDCPA); *Olvera v. Blitt & Gaines,* 431 F.3d 285, 287 (7th Cir. 2005) (rejecting suggestion that the FDCPA creates a federal remedy against efforts to collect a charge that is authorized by the credit agreement but proscribed by state law, where the debt collector's communications are not otherwise false or misleading).[2]

In *Beler*, the Seventh Circuit indicated that the FDCPA is not an enforcement mechanism for other rules of state and federal law.  The court suggested that proceedings in state courts are outside the scope of the FDCPA and declined to use the statute as a basis for imposing new rules on the documents filed in state court.  There, a law firm obtained a judgment against a debtor for the balance of a delinquent credit card.  The law firm sent the debtor's bank a citation to discover assets, causing the bank to freeze the debtor's account.  Most of the funds in the account were disability benefits under the Social Security Act that were exempt from attachment and execution under 42 U.S.C. § 407(a) and Illinois law.  The debtor argued that § 1692f should be read as

---

[2] *See also Carlson v. First Revenue Assurance,* 359 F.3d 1015, 1018 (8th Cir. 2004); *Richardson v. Alliance One Receivables Mgmt.,* 2004 WL 867732 at *3 (S.D. N.Y. 2004); *Ferguson v. Credit Management Control, Inc.,* 140 F.Supp.2d 1293, 1302 (M.D. Fla. 2001) .

6185832v1 875082

prohibiting any collection practice that allegedly runs afoul of other laws, such as the state and federal rules that made the funds in her bank account exempt from attachment.

The Seventh Circuit rejected this argument, stating:

> § 1692f creates its own rules…; it does not so much as hint at being an enforcement mechanism for other rules of state and federal law. This is not a piggyback jurisdiction clause. If the Law Firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship.

*Beler*, 450 F.3d at 474. The FDCPA does not provide a remedy for inaccuracies in state court filings. The holding of *Beler* should be applied with equal force to Plaintiff's attempt to apply the FDCPA to the collection complaint and affidavit.

While it may be true that the FDCPA extends to more egregious violations of state court collection actions,[3] Congress intended that there are certain areas of state court litigation to which the FDCPA does not extend. Velocity's position that the FDCPA does not apply to a purported mischaracterization like the one alleged is in line with *Beler* and the Supreme Court's interpretation of the Act in *Heintz v. Jenkins*, 514 U.S. 291 (1995). The Supreme Court recognized that the FDCPA contains some implicit limitations to its application. *Id.* at 296-298. There, the Court reasoned that 1692c(c)'s limitation on communicating with debtors that have requested that contact with them be ceased did not bar an attorney from serving a lawsuit on that debtor. *Id.* Specifically, the *Heintz* Court stated that "we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception… ." *Id.*

---

[3] *See Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432, (6th Cir. 2006) (holding that the sworn false testimony was not entitled to witness immunity because such immunity could not be invoked "to assist a self-interested party who allegedly lies in an affidavit to initiate a garnishment proceeding."

6185832v1 875082

In addition, the Illinois Code of Civil Procedure and the Illinois courts adequately protect individual's rights in cases like this. If a defendant in a state court is confronted with an inaccuracy in a pleading, there are a number of remedies at his disposal, ranging from dismissal to sanctions. The fact that a pleading may be amended and corrected evidences that parties may occasionally file inaccurate pleadings. A mischaracterization is exactly such a situation. The FDCPA should not be used to hold Velocity and other parties seeking to collect debts to a higher standard – or more severe penalty.

This distinction between a purported mischaracterization of debt and a false statement regarding the legal status of a debt for purposes of the FDCPA potential liability is illustrated well in *Olvera v. Blitt & Gains*, 431 F.3d 285 (7th Cir. 2005). The Seventh Circuit explained that whether the defendant violated the FDCPA in the underlying collection lawsuit turned on whether he sought interest charges not legally allowed under Illinois law. This explanation supports the conclusion that the FDCPA applies to misrepresentations of the legal status of debt, but not on a purported mislabel of a portion of the undisputed debt owed by the Plaintiff.

The distinction in *Olvera* makes sense in the context of state court litigation because issues of whether attorney's fees are allowed under a contract or whether a party has subrogation rights are readily apparent to parties and contain little room for error by the party pleading such allegations. In contrast, an allegation as to the what portion of the "principal" charged off amount includes interest or financing fees is subject to much less certainty.

In the event that a pleading contains a misstatement, the Illinois Code of Civil Procedure already provides a remedy. *See* 735 ILCS 5/2-615 and 619 (motions to dismiss), 735 ILCS 5/2-602 (a denial in an answer) and Illinois Supreme Court Rule 137 (sanctions). Plaintiff could have used the appropriate state court procedure to properly address the purported inaccurate

7

identification of the charged off as principal.  This clarification could have been sought well before any settlement which might purportedly affect Plaintiff's tax returns.  However, rather than choosing to seek to clarify the purported misrepresentation, Plaintiff instead filed a federal class action seeking review of the state court filing in this Court.

C.    *Absolute witness immunity bars the purported FDCPA claims since they are based entirely upon the affidavit attached to the collection complaint.*

The common law doctrine of absolute immunity generally bars claims based upon allegedly false testimony.  In *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983), the United States Supreme Court held that "all witnesses … are absolutely immune from liability based upon their testimony in judicial proceedings."  The Court examined whether Congress intended to supersede the common law witness immunity protection by enacting 42 U.S.C. § 1983.  The Court ultimately concluded that Congress did not intend such an effect.  *Id*. at 334.  The Court further held that a federal statute should not be interpreted to abrogate a long standing doctrine of witness immunity unless it clearly stated so on the face of the statute.  *Id*.

In this case, Plaintiff is asserting claims under the FDCPA, a federal statute.  Both the FDCPA and 42 U.S.C. § 1983 are remedial statutes.  *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 724, 740-41 (7th Cir. 2004) (explaining that the FDCPA is a remedial statute).  Like 42 U.S.C. § 1983, the FDCPA makes no reference to a specific intent to impact the common law absolute witness immunity doctrine.  Therefore, when enacting the FDCPA, Congress did not intend to abolish the well-established legal principle that misstatements by witnesses are absolutely immune from inaccurate testimony.

At least three federal district cases have examined this issue on similar factual circumstances and determined that the absolute witness immunity doctrine prevents FDCPA claims arising out of affidavit testimony.  In *Beck v. Codilis & Stawiarski, P.A.*, 2000 WL

8

34490402 (N.D. Fla. 2000), the Court examined an FDCPA claim brought against a law firm defendant who represented mortgage lenders. Like the instant claims, the *Beck* claims arose out of an affidavit submitted in support of an underlying state court proceeding. However, unlike this case, the affidavit in *Beck* was a false claim for attorney fees. In granting defendant's motion to dismiss, the Court first examined the absolute witness immunity doctrine as defined in *Briscoe*, and then explained:

> When Congress adopted the Fair Debt Collection Practices Act, it presumably was aware of absolute witness immunity, Congress gave no express indication, however, of any intent to override that doctrine. Here, as in *Briscoe*, plaintiffs' interest 'must yield to the dictates of public policy'; their claims based upon the giving of false testimony are barred.

*Id*. at *6.

In *Etapa v. Asset Acceptance Corp.*. 373 F.Supp.2d (E.D. Ky. 2004), the Court examined absolute witness immunity for a false statement in an affidavit in support of a state court collection action. The defendant had asserted in an affidavit that it was a "holder in due course" when, in fact, it was alleged defendant was not. The court explained that the affidavit constituted testimony that was protected by absolute witness immunity. *Id*. at 690-91. Like in *Beck*, the *Etapa* Court found that the FDCPA did not abrogate the doctrine of absolute witness immunity, and therefore, the FDCPA claims premised on false affidavit testimony were barred. *Id*. See also *Cox v. Great Seneca Financial Corp.*, 2007 WL 772937 (E.D. Mo. March 9, 2007) (granting witness immunity and dismissing FDCPA claims for purportedly false attestations of the authenticity of records); *but see Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432, (6th Cir. 2006).

Velocity identified the debt that was charged off as the "principal" debt, and identified the amount added since the credit card charge off as "interest/fees." Velocity did not file a

collection complaint and affidavit seeking to collect an amounts not owed or legally recoverable. Nor did it nefariously seek to inflate the amount the Plaintiff owed or improperly coerce payment from the Plaintiff. Despite Plaintiff's conclusory allegation that "courts are more willing to enforce principal that interest," conspicuously absent is any allegation that the Plaintiff had any defense that would allow a Court to award anything less than the full amount she owed. There can be no malicious motivation attributable to the classification of the charged off debt as "principal," and absolute witness immunity should protect such an innocent statement, even assuming it constitutes a misstatement.

> D.     *Illinois' litigation privilege under federal common law shields Velocity from FDCPA liability for the affidavit it filed in support of the collection complaint.*

Even assuming that Velocity is not entitled to absolute witness immunity, Velocity's statements are entitled to protection under Illinois' litigation privilege. Federal courts often make federal common law by adopting the law of the state whose law would govern in the absence of federal law. *NSB Tech., Inc. v. Spec. Direct Marketing, Inc.,* 2004 WL 1918708 at *3 (N.D.Ill. 2004) (adopting Illinois litigation privilege); *Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.,* 473 F.Supp.2d 1083 (S.D. Cal. 2007) (holding that California's litigation privilege to shield defendant from violations of the FDCPA in connection with allegedly false statements contained in an affidavit). The courts of this Circuit look to state common law to determine the extent and content of the federal common law litigation privilege. *NSB Tech., Inc.,* 2004 WL 1918708 at *3. Drawing on state common law enables federal courts to take advantage of the states' richer body of common law and minimizes the number of different legal rules to which people are subject. *Id.*

Illinois recognizes an absolute privilege for statements in testimony and pleadings in a judicial proceeding. *MacGregor v. Rutberg,* 478 F.3d 790, 791 (7th Cir. 2007) (citing *Ritchey v.*

*Maksin,* 71 Ill.2d 470, 17 Ill.Dec. 662, 376 N.E.2d 991, 993 (Ill.1978); *Spaids v. Barrett,* 57 Ill.

289, 291 (1870); *McNall v. Frus,* 336 Ill.App.3d 904, 271 Ill.Dec. 20, 784 N.E.2d 238, 239-40

(2002); *Jurgensen v. Haslinger,* 295 Ill.App.3d 139, 229 Ill.Dec. 574, 692 N.E.2d 347, 349-50

(1998)).  Illinois courts adopted the litigation privilege to enable parties and attorneys to advance

their positions zealously, without threat of civil liability. *NSB Technology,* 2004 WL 1918708 at

*3; *Malevits v. Friedman,* 753 N.E.2d 404, 406-07 (Ill.App. 2001).   This privilege provides

litigants with unfettered access to the courts and the opportunity to fully litigate their claims,

without fear of liability in derivative litigation. *Id.*   The Illinois privilege affords litigants and

attorneys with immunity from liability arising out of statements made in connection with

litigation. *Id.*   The privilege is broad and protects anything said or written in the course of

litigation, as long as the communication pertains to the legal proceedings. *Id.*

Consistent with *NSB Tech., Inc. v. Spec. Direct Marketing, Inc.,* 2004 WL 1918708 at *3

(N.D.Ill. 2004), this Court should adopt as federal common law the litigation privilege of Illinois

state law.   The privilege provides litigants with unfettered access to the courts and the

opportunity to fully litigate their claims, without fear of tort liability in derivative litigation. *Id.*

The privilege is broad and protects anything said or written in the course of litigation, as long as

the communication pertains to the legal proceedings. *Id.*  Because all of Plaintiff's claims arise

out of statement Velocity made in the course of the underlying collection lawsuit, her claims are

barred by the litigation privilege under federal common law.

This conclusion is consistent with the Seventh Circuit's discussion in *Beler.*  The *Beler*

defendant did not raise this issue, but the Seventh Circuit implied in the opinion is that lawsuits

filed in state court should be controlled by state court judges, not federal district courts reviewing

state court pleadings in derivative FDCPA suits.

6185832v1 875082

E.    *Federal precedent illustrates that the FDCPA should not be applied to documents filed in state courts.*

Both the *Colorado-River* doctrine and the *Rooker-Feldman* doctrine illustrate the principle that there are certain situations where federal courts may decline to exercise their jurisdiction and leave matters to state courts. "The *Rooker-Feldman* doctrine provides that lower federal courts are precluded from exercising jurisdiction over claims that would require them to review a final judgment of a state court." *Rizzo v. Sheahan,* 266 F.3d 705, 713 (7 Cir. 2001) (citing *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).  Federal courts have held  in certain cases that *Rooker-Feldman* barred them from exercising jurisdiction over a plaintiff's FDCPA claims. *See Byrd v. Homecomings Financial Network*,  407 F.Supp.2d 937, 944 (N.D.Ill. 2005) (the Doctrine barred FDCPA claims where those claims attacked a state court foreclosure judgment); *see also Bullock v. Credit Bureau of Greater Indianapolis, Inc.,* 272 F.Supp.2d 780 (S.D.Ind.2003) (finding that FDCPA claims were similar to state claim theories and thus were barred by the Doctrine because the district court would implicitly overturn the state court judgment); *see also Hamid v. Blatt, Hassenmiller, Leibsker, Moore & Pellettieri*, 2001 WL 1543516 (N.D.Ill.) (denying plaintiff's motion to certify subclasses and dismissing subclasses based upon *Rooker-Feldman* doctrine).  Similarly, the *Colorado-River Doctrine* allows a federal court to stay an action in favor of concurrent state proceedings when it would promote "wise judicial administration." *AXA Corp. Solutions v. Underwriters Reins. Corp.,* 347 F.3d 272, 278 (7th Cir.2003); *see also Colorado River Water Conservation Dist. v. U. S.,*  424 U.S. 800, 813 (1976).

Regulation of the contents of state court pleadings, like those areas addressed under *Rooker-Feldman* and *Colorado-River,* is a subject matter over which federal courts should

12

decline to exercise jurisdiction.  Federal courts should refrain from revisiting issues that could have been raised in state court cases and applying the FDCPA to documents filed in state court. Refusing to reexamine state court pleadings is also in line with the policy behind *Colorado-River* as it promotes more efficient judicial administration.

If Plaintiff actually was confused by the classification of her charged off debt as "principal," she could have sought clarification ion the underlying collection lawsuit.  This issue should have been raised in the state court proceeding, and not instead led to a class action lawsuit..  A contrary finding allows state court collection defendants, instead of properly seeking clarification in pleadings through a motion to dismiss, to instead seek review of the underlying pleadings by federal judges.  State courts have jurisdiction and an interest in monitoring their own pleadings and dockets, and they are the proper judges of what is appropriate and inappropriate in state court lawsuits.

### IV.    Conclusion

Plaintiff does not assert that Velocity tried to collect an amount she did not owe, or that it tried to coerce payment of fees or interest that she never agreed to.  Rather, Plaintiff asserts that the characterization of the charged off debt as "principal" was false since it included interest and fees charged by the credit card company before Velocity obtained the debt.  While Plaintiff could have sought clarification of the issue in the underlying state case, she decided to file a lawsuit in federal court.  Had she sought clarification in the underlying state court action, Velocity would have been entitled to all of the procedural and legal defenses available in Illinois courts, as well as had the issue in front of the judge familiar with the parties and attorneys involved.  Instead, it finds itself defending a class action lawsuit because of its innocent mischaracterization of the charged off debt as "principal.".

6185832v1 875082

For all the above reasons, Defendant, Velocity Investments, LLC, respectfully requests that the Court dismiss Plaintiff's Complaint and enter judgment in defendant's favor.

Respectfully submitted,

**Velocity Investments, LLC**

By: _____s/Justin M. Penn_____
One of the Attorney for Defendant

David M. Schultz
Justin M. Penn
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081
312-704-3000

6185832v1 875082

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney certifies that on May  7, 2007, the above **Motion to Dismiss** was electronically file using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/Justin M. Penn_____
Justin M. Penn

6185832v1 875082